UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal Action No. 1:21-cr-10296-IT |
| | * |
| JOHN DOE, | * |
| a.k.a. an individual with initials L.M., | * |
| | * |
| Defendant. | |

MEMORANDUM & ORDER

May 7, 2024

TALWANI, D.J.

On September 15, 2021, the government filed a criminal complaint against Defendant John Doe, an individual with the initials L.M., alleging possession with intent to distribute 10 grams or more of a fentanyl analog on or about June 9, 2021, in violation of 21 U.S.C. § 841. Doe was arrested on September 16, 2021, during a controlled drug buy, and a basement apartment at 53 Dix Street was searched pursuant to a search warrant obtained later that day. On October 5, 2021, Doe was indicted on charges of distribution and possession with intent to distribute 40 grams or more of fentanyl (Count One); possession with intent to distribute 10 grams or more of cyclopentyl fentanyl and 40 grams or more of fentanyl (Count Two); and possession with intent to distribute 100 grams or more of cyclopentyl fentanyl and 400 grams or more of fentanyl (Count Three). Indictment [Doc. No. 18].

Doe moves to suppress evidence of the September 16 controlled buy as a violation of his Sixth Amendment right to counsel; to suppress statements made during his September 16 arrest as a violation of his Fifth Amendment right against self-incrimination; and to suppress evidence obtained from the September 16 search of the apartment on the bases that the application for the warrant relied on statements obtained in violation of his Fifth and Sixth Amendment rights and

that the warrant is unsupported by probable cause in violation of his Fourth Amendment rights. Doe also requests a <u>Franks</u> hearing related to the insufficiency of the warrant and an evidentiary hearing regarding the alleged <u>Miranda</u> warnings. Def. Mot. to Suppress Evidence Gathered Pursuant to a Search Warrant for the Basement Apartment at 53 Dix ("Def. Mot. to Suppress I") [Doc. No. 76]; Def. Mot. to Suppress Statements and Other Evidence Pursuant to the Fifth and Sixth Amendments ("Def. Mot. to Suppress II") [Doc. No. 77]. For the reasons set forth herein, Defendant's Motions are DENIED.

## I.   Background

### A.   *June 24, 2021 Cellphone Tracking Warrant*

On June 24, 2021, as part of an investigation of John Doe for distribution of controlled substances, the use of a communication facility in the commission of narcotics trafficking offenses, and conspiracy to commit narcotics trafficking offenses, the government obtained a warrant to track the location of a phone with call number (347) 596-1155, subscribed to Joffre Cordero, of Staten Island, New York. 6/24/21 Def. App'x 30 (Application for Cellphone Tracking Warrant) [Doc. No. 76-1].[1]

### B.   *September 15, 2021 Criminal Complaint Application and Arrest Warrant*

On September 15, 2021, the government filed an application for a criminal complaint, alleging that on or about June 9, 2021, John Doe possessed with intent to distribute 10 grams or more of a fentanyl analog, in violation of 21 U.S.C. § 841. Complaint [Doc. No. 4]. The application was based on facts set forth in the Affidavit of James Picardi in Support of

---

[1] Neither side provided a copy of the affidavit in support of the cellphone tracking warrant that was attached to this application and Doe does not challenge the sufficiency of the affidavit in support of this warrant.

Application for Criminal Complaint ("Picardi 1st Aff.") [Doc. No. 4-1], The Magistrate Judge approved the criminal complaint and search and arrest warrant.[2]

        C.       *The September 16, 2021 Arrest of Doe*

On September 16, 2021, Doe was placed under arrest and searched by law enforcement outside of a restaurant in Lawrence, Massachusetts. Def. Supp. App'x 4 (Sept. 16, 2021 Picardi Investigation Report ¶¶ 10–11) [Doc. No. 79-1]. Two packages of suspected narcotics were recovered from Doe's person, appearing to weigh approximately 100 grams and 25 grams each. Id. ¶ 11. Law enforcement also removed a set of keys from Doe's vehicle, a Honda CRV, at the time of the arrest. Id. ¶ 13. According to the government's submissions, after Doe was arrested, Lawrence Police Department Detective Jordany Vargas provided Doe with a Spanish language Miranda warning. Gov't Oppo., Ex. 1 (Vargas Decl. ¶ 3) [Doc. No. 83-1]; Sept. 16, 2021 Picardi Investigation Report ¶ 12 [Doc. No. 79-1]. Det. Vargas is a fluent Spanish speaker. Vargas Decl. ¶ 3 [Doc. No. 83-1]. Det. Vargas read the warnings verbatim from a preprinted card. Id. The English translation of those warnings, as given on the card, see id., reads as follows:

> You have the right to remain silent.
> If you choose to speak, anything you say can be used against you in court.
> You have the right to consult with a lawyer before answering any questions, and you can have him or her with you during questioning.
> If you cannot afford a lawyer and want one, a lawyer will be provided by the Commonwealth before questioning, at no cost to you.
> You may answer questions now and waive (that means, give up) your right to counsel and your right to remain silent.
> If you decide to talk to me, you still have the right to stop at any time and for any reason.
> Do you understand what I have told you? Will you speak to me now?

Id., Ex.1 (Miranda card) [Doc. No. 83-1].

---

[2] Doe does not challenge the sufficiency of the affidavit in support of the application for criminal complaint and search and arrest warrant.

Neither the warning nor Doe's response was electronically recorded and Doe was not asked to sign a written Miranda warning form. Vargas Decl. ¶¶ 4–5 [Doc. No. 83-1]. Det. Vargas reports that when he asked Doe the final two questions, Doe "verbally responded to both questions in the affirmative." Id. ¶ 4. Det. Vargas then questioned Doe about his place of residence. Doe answered his questions "freely and conversationally." Id.

Doe "provided his address to be 76 W Newton Street, Apt. 3, Boston, MA, and identified a key he had as belonging to that location." Sept. 16, 2021 Picardi Investigation Report ¶ 12 [Doc. No. 79-1]. Det. Vargas also questioned Doe about Dix Street in Boston. Id. ¶ 13. One of the officers showed Doe the keys that had been removed from his vehicle; Doe identified a key with an American flag image on it and "stated that the key was for the basement." Id. He then "indicated his apartment was down the hall." Id. Det. Vargas asked Doe for the exact address of the Dix Street apartment. Id. Doe initially responded that the address was 51 but corrected himself and said 53 Dix Street. Id.

      D.    *The Further Investigation of the Dix Street Apartment*

Also on September 16, 2021, after Doe's arrest, law enforcement conducted a follow-up investigation of the 53 Dix Street apartment. Def. App'x 23–25 (Sept. 23, 2021 Nastari Investigation Report) [Doc. No. 76-1]. Agent Nastari reported that a tenant of 53 Dix Street was shown a picture of Doe but "had no knowledge of [Doe] living at the residence." Id. ¶ 2. Another named tenant was shown a picture of Doe and did not recognize him. Id. ¶ 4. When the landlord arrived, he was also shown a picture of Doe, did not recognize the photo, and "confirmed he was not a tenant at the residence." Id. ¶ 6. The landlord stated that he did not require a lease or any type of rental agreement for the units in the building but provided contact information for "one of the tenants that occupied the last unit within the basement," including the name "Pelota-BESMA" and the cell phone number 1-347-596-1155. Id. ¶ 8. The landlord described a different

4

individual who did not match Doe's description and said that he had not seen the person he believed to be renting the unit in over four months. Picardi 2d Aff. ¶ 22 [Doc. No. 76-1].

      E.      *The Affidavit in Support of the Application for a Search Warrant*

Later that evening, law enforcement applied for a search warrant of the 53 Dix Street location. Def. App'x 2 (53 Dix Street Warrant App.) [Doc. No. 76-1]. Agent Picardi provided an Affidavit in support of that search warrant. Def. App'x 4–18 (Picardi 2d Aff.) [Doc. No. 76-1]. The Affidavit stated that Piccardi incorporated by reference his prior affidavit in support of the criminal complaint, id. ¶ 13, and then included the following information in support of the search warrant.

Agent Picardi reported that on July 19, 2021, investigators had "CS" arrange a controlled purchase of fentanyl from Doe. Id. ¶ 14. Immediately after CS called Doe to place an order for 100 grams of fentanyl, investigators observed Doe leave his residence on West Newton Street in Boston. Id. He stopped approximately two minutes later at a grocery market and departed the market two minutes later. Id. Twenty-two minutes later, investigators saw Doe park in the area of Dix Street, and walk towards 53 Dix Street. Id. ¶ 15. The investigators observed Doe return to his vehicle briefly before going back toward 53 Dix Street. Id. At approximately 10:50 a.m., the officers saw Doe leave the Dix Street area. Id. The investigators also observed that 53 Dix Street had an alley on the side of the house, with a door to the basement. Id. After leaving Dix Street, Doe traveled directly to Lawrence where he met with CS, "as detailed in [Picardi's] September 15, 2021 affidavit." Id.

Agent Picardi stated that he had reviewed location data provided by the GPS tracking device attached pursuant to a July 7, 2021 warrant to Doe's Honda CRV. Id. ¶ 16. "Between July 15, 2021, and September 16, 2021, the Honda CRV was in the area of the Target Location more than twenty times." Id.

5

Agent Picardi reported further that on the morning of September 16, 2021, Doe left his residence on West Newton Street in Boston at approximately 8:30 a.m. and drove to the Braintree RMV where he dropped off an associate. Id. ¶ 17. Law enforcement instructed CS to call Doe to purchase fentanyl, which he did at approximately 9:30 a.m. Id. During the recorded call, CS requested to purchase 125 grams of fentanyl and that the drugs be apportioned in two separate baggies of 100 grams and 25 grams of fentanyl each. Id. Doe and CS were to meet in Lawrence around noon. Id.

Approximately an hour after the phone call, Doe left the RMV and drove to Ames Street, where he dropped off the same associate. Id. ¶ 18. At approximately 11:17 a.m., "investigators saw Doe arrive in the area of 53 Dix Street but were unable to see Doe enter the residence." Id. ¶ 18. Approximately 32 minutes later, investigators saw Doe "walking from the direction of 53 Dix Street back to his vehicle." Id. At 11:56, Doe left CS a voicemail message stating that he was on his way. Id. In Lawrence, Doe made a stop at a residence, where he stayed for approximately five minutes. Id. Doe did not appear to be carrying anything when he left the residence. Id.

Agent Picardi also reported on Doe's arrest earlier that day, including that (1) Doe had been searched and two packages of suspected narcotics had been recovered from that search, id. ¶ 19; (2) Doe had received Spanish-language Miranda warnings, id. ¶ 20; and (3) Doe showed officers a key on his keychain and told them that the key went to the basement of the house on 53 Dix Street, and that his apartment was the one "down the hall," id.

Agent Picardi also repeated many of the facts contained in the Nastari Investigation Report, including that: (1) investigators had made contact with other tenants of 53 Dix Street, who allowed the investigators to enter the basement area of the building, id. ¶ 21; (2) the

basement apartments shared a common area, including a refrigerator, hot plate, and bathroom, id.; (3) one tenant was shown a picture of Doe but did not recognize him, id.; (4) the landlord for 53 Dix Street subsequently arrived and spoke with investigators, id. ¶ 22; and (5) the landlord had a contact number for the individual who rented the unit, and the phone number matched the phone number Doe had been using "to contact CS throughout the investigation," id. Agent Picardi elaborated further that the landlord did not recognize a picture of Doe, and the landlord's description of the tenant he believed to be renting the apartment did not match Doe. Id.

Magistrate Judge Kelley granted the request for a search warrant. Def. App'x 1 [Doc. No. 76-1].

F. *The Search of 53 Dix Street Basement Apartment*

Investigators conducted a search that same evening and recovered 1346 grams of suspected fentanyl and additional drug paraphernalia located behind an electric wall heating unit in the 53 Dix Street basement apartment. Def. Supp. App'x 1–3 (Sept. 30, 2021 Joyce Investigation Report ¶¶ 4–5) [Doc. No. 79-1].

II. **Discussion**

A. *Sixth Amendment*

Doe argues that his Sixth Amendment right to counsel attached "[w]hen the government filed a criminal complaint" against him, and that in the absence of a valid Sixth Amendment waiver, "both the government and its informants are prohibited from deliberately eliciting incriminating evidence from a defendant when counsel is not present." Def. Mot. to Suppress II at 5 [Doc. No. 77]. He concedes, however, that the court cannot grant his motion on this ground in light of the First Circuit's decision in United States v. Boskic, 545 F.3d 69, 82 (1st Cir. 2008), and raises the argument only to preserve the issue for further review. Accordingly, the court denies Doe's Sixth Amendment argument under controlling First Circuit precedent.

B.     *Fifth Amendment*

Doe also argues that the statements and physical evidence obtained during his September 16, 2021 arrest must be suppressed because there is no evidence that Doe was provided with proper Spanish-language Miranda warnings before he spoke with the investigators, that he understood those warnings, or that he knowingly and voluntarily waived his Miranda rights. Def. Mot. to Suppress II at 3 [Doc. No. 77]. The court addresses each of these three arguments in turn.

"The Supreme Court developed the Miranda rules as a prophylactic measure to dissipate the coercion inherent in the custodial interrogation setting, with a goal of ensuring that any statements made by a suspect are 'truly the product of free choice'" and consistent with the Fifth Amendment to the United States Constitution. United States v. Molina-Gómez, 781 F.3d 13, 21 (1st Cir. 2015) (internal citation omitted). "Accordingly, '[i]t is well established that Miranda warnings must be communicated to a suspect before he is subjected to 'custodial interrogation.'" Id. at 21–22 (quoting United States v. Nai Fook Li, 206 F.3d 78, 83 (1st Cir. 2000)).

"[M]ost statements made by a suspect during a custodial interrogation are inadmissible at trial absent a valid waiver of Miranda rights." United States v. Carpentino, 948 F.3d 10, 25 (1st Cir. 2020). "Determining the validity of a Miranda waiver usually entails two separate inquiries. The waiver must be both voluntary, and knowing and intelligent." United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004). "A waiver is voluntary when 'it [is] the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" Id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986)). "A waiver is knowing and intelligent when 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Id. (quoting Moran, 475 U.S. at 421). "Both inquiries are judged based on the 'totality of the circumstances surrounding the interrogation,'"

8

id. at 39–40 (quoting Moran, 475 U.S. at 421), and "the particular case, 'including the background, experience, and conduct of the accused,'" United States v. Garcia, 983 F.2d 1160, 1169 (1st Cir. 1993) (quoting North Carolina v. Butler, 441 U.S. 369, 374–75 (1979)). "An inquiring court must start with a presumption that the suspect did not waive his rights, and the government bears the burden of showing the validity of the waiver by a preponderance of the evidence." Carpentino, 948 F.3d at 26.

1. Whether Doe Received Miranda Warnings

Agent Picardi's September 16, 2021 Investigation Report regarding "the arrest of [Doe] on 9-16-21" states that "Lawrence PD Det. Vargas provided [Doe] with his Miranda rights in Spanish and questioned [Doe] about his residence." Sept. 16, 2021 Picardi Investigation Report ¶ 12 [Doc. No. 79-1]. Det. Vargas, in turn, avers that he provided Doe with Miranda warnings in Spanish; that Vargas was "tasked with this role because [he is] a fluent Spanish speaker"; and that he "read the warnings to [Doe], in Spanish, verbatim, from a pre-printed card." Vargas Decl. ¶ 3 [Doc. No. 83-1]. A copy of the card is attached to Det. Vargas' affidavit. Id.; see supra Section I.C (reciting the English portion of the Miranda card used by Det. Vargas). The government has therefore introduced evidence sufficient to support a finding that Doe received Miranda warnings in Spanish before speaking with the investigators.[3]

---

[3] Doe relies on an Investigation Report by Agent Joyce [Doc. No. 79-1] which does not mention whether Doe received Miranda warnings as reason to doubt whether Doe was actually provided such warnings. That report was prepared two weeks after the search and is "a summary of the acquisition of Exhibit #6 and does not contain every fact, detail, or observation made." Id. Exhibit #6 is "approximately 1346 gross grams of suspected fentanyl" and the report primarily details the search of the apartment, the discovery of the fentanyl, and the custody of the evidence. See id. The report includes no details of the arrest, except to provide the information Doe gave to Detective Vargas that morning as to the apartment and key. In contrast, Agent Picardi's contemporaneous report specifically concerned Doe's arrest. As a result, the court does not find the absence of a Miranda warning discussion in Joyce's September 30, 2021

2. Whether Doe Understood the <u>Miranda</u> Warnings

Det. Vargas also states that after reading the card's final two lines, which translate to "Do you understand what I have told you? Will you talk to me now?"[4] Doe "verbally responded to *both questions* in the affirmative." <u>Id.</u> ¶ 4 (emphasis added); <u>cf.</u> <u>United States v. Clark</u>, 2023 WL 4706521, at *4 (D. Mass. July 21, 2023) ("no obvious and unambiguous way" of ascertaining whether defendant's single affirmative statement was related to waiver where statement was made after the officer had concluded reading defendant's rights but did not pose a direct question regarding her understanding of those rights). Agent Picardi also provided an affidavit explaining that Doe was previously arrested in 2016, at which time he received substantially similar Spanish-language <u>Miranda</u> warnings, and a copy of a Spanish language translation where he placed his initials after each statement of his rights and indicated that he understood those rights, before declining to waive his rights. Gov't Oppo., Ex. 2 (Picardi 3d Aff. ¶ 3) [Doc. No. 83-2]. Doe's familiarity with <u>Miranda</u> warnings is further evidence that he understood the warnings and attendant rights when Det. Vargas read them to him in 2021.[5] The court finds that there is sufficient evidence that Doe understood the <u>Miranda</u> warnings read to him by Det. Vargas.

---

Investigation Report concerning the search of the apartment undermines Agent Picardi's contemporaneous report on the arrest or Detective Vargas's Affidavit.

[4] Doe objects that these questions standing alone are not sufficient to apprise a defendant that speaking to an officer would constitute a waiver. But a preceding line of the card translated to "You may answer questions now and waive (that means, give up) your right to counsel and your right to remain silent." Vargas Decl., Ex. 1 [Doc. No. 83-1]. The court finds that this explanation sufficiently clarifies that if Doe chose to answer the officer's questions, he would be waiving his <u>Miranda</u> rights.

[5] Doe also contends that his refusal to speak to officers on that occasion should weigh against a finding that he understood his rights here, but the court does not find that Doe's 2016 decision is probative here.

3. Whether Doe Voluntarily Waived his Miranda Rights

The court also finds that the government has produced sufficient evidence that Doe waived his Miranda rights. The court's conclusion is based on the totality of the circumstances, including Doe's affirmative response to Det. Vargas's question "Do you want to talk to me now?"[6]; Doe's "prior experience with the criminal justice system," see United States v. Jacques, 744 F.3d 804, 809 (1st Cir. 2014); and Doe's "cooperative" conduct during his arrest including by answering Det. Vargas's questions "freely and conversationally," see Vargas Decl. ¶¶ 2, 4 [Doc. No. 83-1]); see also Jacques, 744 F.3d at 809. These factors, coupled with "the absence of any evidence of police coercion or intimidation," weigh in favor of finding that Doe's waiver was knowing and voluntary. See Yeboah-Sefah v. Ficco, 556 F.3d 53, 81 (1st Cir. 2009); see also United States v. Guerrero, 114 F.3d 332, 338 (1st Cir. 1997) ("Examining the totality of the circumstances, we cannot say that [defendant's] will was 'overborne so that the statement was not his free and voluntary act.'").

4. Evidentiary Hearing

Doe requests an evidentiary hearing in order to question the arresting officers on additional details regarding the Miranda warning. To justify an evidentiary hearing, the defendant must "make a sufficient threshold showing that material facts were in doubt or

---

[6] Doe contends that this question is materially different from the question posed in his earlier arrest, which translated to: "Having these rights in mind, do you wish to talk to us without a lawyer being present?" See Picardi 3d Aff., Ex. 1 [Doc. No. 83-2]. The court disagrees that the distinction is material. Regardless, there is no requirement that such an explicit question be asked of the defendant; a defendant may implicitly waive his Miranda rights where he understands those rights and nevertheless freely chooses to speak to law enforcement—as was the case here. See United States v. Simpkins, 978 F.3d 1, 11 (1st Cir. 2020) ("[T]he relevant question is not whether the defendant explicitly waived his Miranda rights but, rather, whether the defendant's conduct, evaluated in light of all the attendant circumstances, evinced a knowing and voluntary waiver.").

11

dispute." United States v. Allen, 573 F.3d 42, 50 (1st Cir. 2009). Doe has provided no reason to call into question the material facts provided in either Det. Vargas's recent affidavit or Agent Picardi's September 16, 2021 Investigation Report: Instead, Doe references the contents of a September 30, 2021 Investigation Report, which was focused on a different aspect of the investigation, see supra n.3, and Doe's conduct during an arrest and interrogation in 2016, which has no bearing on Doe's decisions in 2021, see supra n.5. Accordingly, Doe's request for an evidentiary hearing regarding the Miranda warnings is denied.

    C.    *Fourth Amendment*

The Fourth Amendment to the United States Constitution provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. "'A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element.'" United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)).

        1.    Standing

"To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011) (citing Minnesota v. Olson, 495 U.S. 91, 95 (1990)). "The inquiry involves a two-part test: first, whether the defendant had an actual, subjective, expectation of privacy; and second, whether that expectation 'is one that society is prepared to recognize as objectively reasonable.'" Id. at 48–49 (citation and quotation omitted).

The government asserts that Doe lacks standing to challenge the Dix Street search warrant because he has failed to establish a legitimate expectation of privacy at that location. Gov't Oppo. 8 [Doc. No. 83]. Doe responds that because he possessed a key to the apartment and informed law enforcement "that the apartment belonged to him," he has met his burden on this issue. Def.'s Reply 12 [Doc. No. 83].

The court finds that Doe has standing to challenge the warrant. Doe possessed a key to the Dix Street basement and "indicated *his* apartment was down the hall" when questioned by law enforcement about the Dix Street location. Sept. 16, 2021 Picardi Investigation Report ¶ 13 [Doc. No. 79-1] (emphasis added). Further, the cell phone number given by the landlord as the contact information for the basement unit occupant was the same cell phone number Doe was using to communicate with CS.[7] Whether the apartment was used as a residence or for drug-related activities, see United States v. Jones, 949 F. Supp. 2d 316, 320 (D. Mass. 2013) ("historical use of the property searched" is factor to be considered); cf. Minnesota v. Carter, 525 U.S. 83, 90 (1998) (no expectation of privacy where defendants "were essentially present for a business transaction and were only in the home for a matter of hours"), there is no indication that any other individual had control over the Dix Street apartment.[8] Cf. 949 F.3d at 320 (apartment belonged to and was primarily paid for by a woman who was not the defendant).

---

[7] Doe argues elsewhere in his Motion that because the cell phone number was registered to a Joffre Cordero, see Def. App'x 30 [Doc. No. 76-1], that piece of evidence should not be used to tie him to the apartment. However, the court does not find that the fact the number was registered to a third party undermines the conclusion that the cell phone number was a means by which the landlord (or others) could contact Doe himself.

[8] While the Nastari Investigation Report names "Pelota-BESMA" as the tenant, neither the Report nor Picardi's affidavits confirm whether a person by that name was ever identified.

13

Without any contrary facts in this record suggesting that Doe did not have lawful control over and use of the apartment, the facts in the record are sufficient to show that Doe had a legitimate expectation of privacy over the apartment.

2. Probable Cause

Doe also asserts that the government lacked probable cause connecting the Dix Street apartment to the alleged drug activity. The probable cause inquiry is a "'practical, common-sense' one, that takes into account the 'totality of the circumstances.'" Dixon, 787 F.3d at 59 (quoting Feliz, 182 F.3d at 86 and United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997)). In making the probable cause determination, the "issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application." United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). However, the probable cause showing "leaves ample room for reasonable inferences based on common experience: an affidavit submitted to show probable cause need not point to some straight-line connection but, rather, may rely on the affiant's connecting of a series of dots in a commonsense way." United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (citing Florida v. Harris, 568 U.S. 237, 244 (2013)); see also id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)) ("A showing of probable cause may be premised on either direct or circumstantial evidence or some combination of the two.").

A reviewing court must examine the affidavit in support of the warrant in a "practical, commonsense fashion" and give "considerable deference" to the magistrate's finding that the information contained therein satisfied the probable cause showing. Feliz, 182 F.3d at 86. Reversal is appropriate only where a reviewing court sees "no substantial basis for concluding that probable cause existed." Dixon, 787 F.3d at 58–59. "[D]oubtful or marginal cases in this

14

area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965).

          a.        The Record Before the Magistrate Judge

Doe argues first that the magistrate judge could not consider Agent Picardi's criminal complaint affidavit because it was not physically attached to the Dix Street search warrant application. In support, Doe relies upon United States v. Sheehan, 70 F.4th 36 (1st Cir. 2023). There, the First Circuit held that "merely alluding to a document, without more" is insufficient "to incorporate that document by reference" in a warrant application. Id. at 50. Rather, "incorporation would require both suitable words to that effect and the attachment of the affidavit." Id. The court agrees.

Agent Picardi, unlike the agent in Sheehan, expressly incorporated by reference his earlier affidavit. Picardi 2d Aff. ¶ 13 ("I incorporate by reference my affidavit in support of that criminal complaint and search warrant.") [Doc. No. 76-1]; cf. Sheehan, 949 F.4th at 49. Also, unlike Sheehan, the magistrate judge who issued the search warrant in this case had reviewed the first affidavit before approving the criminal complaint and arrest warrant, and had done so only the day before. See Gov't Oppo. 13 [Doc. No. 83] cf. Sheehan, 949 F.4th at 49 (no indication that clerk who issued second warrant was aware of facts contained in first warrant). However, because Picardi did not physically attach his prior affidavit to the search warrant application, under Sheehan's two-part test, the magistrate judge could not consider the previous affidavit. Accordingly, the court analyzes the probable cause for issuing the warrant without considering Agent Picardi's first affidavit.[9]

---

[9] Doe also argues that his statements and other evidence obtained during his arrest should be excluded. Because the court concludes that Doe's Sixth Amendment right did not attach when the criminal complaint was filed, see supra Section II.A, and that Doe received and waived his

15

In his second affidavit, Agent Picardi stated the following facts: (1) on July 19, 2021, after CS arranged a controlled buy of 100 grams of fentanyl, Doe drove to the area of 53 Dix Street, parked there, exited his vehicle, walked towards 53 Dix Street, departed, and met with CS in Lawrence, MA, Picardi 2d Aff. ¶¶ 14–15 [Doc. No. 76-1]; (2) between July 15, 2021, and September 16, 2021, the GPS tracking data for Doe's Honda CRV placed him in the area of 53 Dix Street more than twenty times, id. ¶ 16; (3) on September 16, 2021, CS called Doe to arrange a controlled buy of 125 grams of fentanyl and requested that Doe package the fentanyl into two packages of 100 grams and 25 grams each, id. ¶ 17; (4) after the call, Doe drove to the area of 53 Dix Street, then left the area to drive to Lawrence, id. ¶ 17; (4) when Doe was arrested in Lawrence, officers recovered two packages of suspected narcotics from a search of his person, id. ¶ 19; and (5) when Doe was questioned about the Dix Street house, he identified a key in his possession as belonging to the basement apartment "down the hall" at 53 Dix Street, id. ¶ 20.[10]

Agent Picardi also provided additional information about the 53 Dix Street location based on the follow-up investigation conducted on September 16, 2021, see supra Section I.D, including that the landlord gave the phone number Doe used to communicate with CS as the contact phone number for his tenant. Picardi 2d Aff. ¶ 22 [Doc. No. 76-1]. Picardi specifically noted that "[b]ased on the use of that phone number as a contact number for the Target Location, I believe that DOE rents the Target Location." Id.

---

Miranda rights, see supra Section II.B, the court will consider the evidence from the September 16, 2021 arrest included in the second affidavit in assessing whether probable cause supported the Dix Street search warrant.

[10] Doe contends that absent the information in Picardi's first affidavit, there is insufficient evidence to credit CS as a reliable informant. Def.'s Mot. to Suppress I at 11–12 [Doc. No. 76]. The evidence in Picardi's second affidavit is not based on information provided by CS, but on law enforcement officers' observations of the controlled buy arranged by CS at their direction, Doe's movements and the tracking of the car he was using, the suspected narcotics from Doe's person when he was arrested, and Doe's statements when he was questioned.

b.       Commission Element

Doe argues that the search warrant application failed to demonstrate probable cause that a crime had been committed. The second affidavit provides evidence of two different occasions—one on July 19, 2021, and the other on September 16, 2021—where Doe was contacted by CS about the purchase of fentanyl then travelled to Lawrence, MA, to meet CS. The second affidavit also details that on July 19, 2021, Doe did meet with CS and on September 16, 2021, Doe was arrested before meeting with CS and two packages of suspected narcotics, divided between two bags as requested by CS, see Picardi 2d Aff. ¶ 17 [Doc. No. 76-1], were recovered from Doe's person. This is sufficient evidence from which the magistrate judge could conclude there was a crime committed, namely, that Doe was distributing fentanyl.

c.       Nexus Element

Doe also argues that the warrant did not contain sufficient evidence to support the "nexus" element. "With regard to the 'nexus' element, the task of a magistrate in determining whether probable cause exists is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Feliz, 182 F.3d at 86 (quoting Gates, 462 U.S. at 238). Agent Picardi's second affidavit states that although Doe visited other locations between receiving the call from CS to purchase fentanyl and meeting CS in Lawrence, the only location Doe visited both times was the Dix Street area. It also states that GPS data revealed Doe's Honda CRV to be in the vicinity of the Dix Street more than twenty times between July 15, 2021, and September 16, 2021, while Doe claimed a different location as his residence. This evidence sufficiently links the Dix Street area to Doe's alleged drug activity.

Additionally, when Doe was arrested, he was questioned about Dix Street, at which point he identified a key in his possession, indicated that "his apartment was down the hall" in the basement, and that the unit was located at 53 Dix Street. Investigators spoke to the landlord of 53 Dix Street prior to the search warrant being executed, and the landlord provided a cell phone number for the occupant of the basement unit that matched the number Doe gave CS. When considered in conjunction with Doe's frequent presence in the area of Dix Street, including his visits preceding both meetings with CS, this evidence is sufficient to link Doe's basement unit at 53 Dix Street to the alleged drug offense.

Based on the information in Agent Picardi's second affidavit, the court concludes there was probable cause to issue a warrant as to the 53 Dix Street basement apartment.

3. <u>Franks</u> Hearing

Doe argues that Agent Picardi materially omitted information from his second affidavit that was contained in the Nastari Investigation Report, including that more than one tenant did not recognize a photo of Doe, that the landlord provided the name "Pelota-BESMA" in conjunction with the basement apartment, and that the landlord "confirmed that [Doe] was not a tenant at the residence." Def.'s Mot. to Suppress I at 17–18 [Doc. No. 76]. Where Picardi disclosed that the landlord did not recognize a photo of Doe, the landlord's description of the tenant did not match Doe (information *not* included in the Nastari Investigation Report), and one of the tenants stated that he did not recognize a photo of Doe, <u>see</u> Picardi 2d Aff. ¶¶ 21–22 [Doc. No. 76-1], the excluded information was not material.

Doe also argues that the warrant omitted material information from the cellphone search warrant—namely, that the telephone number given by the landlord was registered to a Joffre Cordero of Staten Island, NY. Def.'s Reply 15 [Doc. No. 86]. But the identity of the individual

18

paying the cell phone bill is not particularly relevant to the nexus inquiry where the evidence shows Doe was the individual who used the cell phone corresponding to that phone number.

    4. Good Faith Exception

Under the good faith exception to the exclusionary rule, evidence obtained under an invalid warrant is nonetheless admissible if the officer acted in good faith in relying on the warrant. United States v. Leon, 468 U.S. 897, 918–19 (1984). The good-faith exception is only overcome where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23.

Here, even if the information contained in the Dix Street search warrant affidavit was not sufficient to support a finding of probable cause without the criminal complaint affidavit, Agent Picardi's second affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." See id. at 923. And there is no reason to believe Agent Picardi was acting with intent to mislead or with reckless disregard of the law when he failed to attach the criminal complaint affidavit where he used express words of incorporation in the application and submitted the application one day after submitting the criminal complaint affidavit to the same magistrate judge. Accordingly, the good-faith exception to the exclusionary rule would apply to the evidence obtained under the Dix Street warrant.

**III. Conclusion**

For the foregoing reasons, Doe's Motions to Suppress [Doc. Nos. 76 and 77] are DENIED.

IT IS SO ORDERED

May 7, 2024                                               /s/    Indira Talwani
                                                                                     United States District Judge